IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| LEVERNE RAGIN, | ) Civil Action No. 3:04-23416-CMC-JRM |
| Plaintiff, | ) |
| vs. | ) |
| MARTIN MARIETTA MATERIALS, INC., | ) |
| | ) **AMENDED** |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff, Leverne Ragin ("Ragin") filed this action on December 29, 2004. He alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981").[1] Defendant, Martin Marietta Materials, Inc. ("Martin Marietta") filed a motion for summary judgment on September 21, 2005. Ragin filed a memorandum in opposition to summary judgment on October 20, 2005. Martin Marietta filed a reply on October 31, 2005.

SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005  (4th Cir.), cert. denied, 484 U.S. 897 (1987).  This does not mean that summary judgment is never appropriate in these cases.  To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice."  Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact."  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."  Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial."  Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995).  Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial.  Baber, citing Celotex Corp., supra.  Moreover, the non-movant's proof must meet "the substantive evidentiary standard

of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS

1. Martin Marietta is the second largest construction aggregates producer in the United States, supplying products such as crushed stone and gravel for use in the construction industry. At Martin Marietta's Cayce, South Carolina quarry facility, natural rock in the quarry is blasted using explosives. The blasted rock is loaded into pit trucks which transport rock from the pit to the processing plant. David Risner Aff., Paras. 3-4.

2. Martin Marietta is regulated by the Mine Safety and Health Administration ("MSHA") and must comply with its laws, regulations, and policies. The company is penalized for violations thereof. David Risner Aff., Para. 5.

3. Ragin, an African-American male, began working for Martin Marietta at the Cayce quarry on June 11, 1999, as a pit truck driver. Ragin Aff., Paras. 2 and 7; Ragin Dep. 7 and 25.

4. Ragin received written materials, including "Basic Safety Rules" and the "Code of Ethics and Standards of Conduct" as well as on site training regarding safety rules and policies. See Ragin Dep. 54-55, 59, 71, Ex. 1, and Ex. 2; David Risner Aff., Para. 6.

5. After approximately one year, Ragin was moved to the pit in the job of "utility person." Ragin Aff., Para. 8; Ragin Dep. 26.

6. After Ragin was a utility person for approximately one year, he asked his supervisor at the time (Teddy Jackson) for a raise, but was told that his rate of pay was at the highest level for a utility person. Ragin Aff., Para. 9; Ragin Dep. 26-27.

7. Soon afterwards, a white male was hired as a mechanic at a higher rate of pay than Ragin. Ragin asked Greg Hurlburt ("Hurlburt"), the plant manager at the time, for a raise and in March 2001 Hurlburt gave him the title of mechanic with a pay raise. Ragin Aff., Paras. 10-11; Ragin Dep. 26-27, 44, 67.

8. Ragin claims that he had the same duties and responsibilities as before, but was just given a different job title and a raise in pay. Ragin Aff., Para. 12; Ragin Dep. 27.[2]

9. Ragin noticed in 2001 that job openings were not posted at Martin Marietta. He complained to management and hired a lawyer to attempt to persuade Martin Marietta to change this practice. His lawyer sent a letter to Jonathan Steward, Vice President of Human Resources, in July 2001. Ragin met shortly thereafter with Teddy Jackson and Hurlburt who advised him that Martin Marietta did not post job openings for any of its employees at the Cayce quarry. Ragin Aff., Paras. 13-15; Ragin Dep. 66-70.

10. Ragin claims that he was closely watched after complaining to management. Ragin Aff., Para. 16.

11. Martin Marietta maintains an ethics hotline to allow employees to air grievances. In July 2001, Ragin used the hotline to lodge a complaint about Martin Marietta not posting job openings. In approximately March 2003, Ragin used the hotline to complain about job

---

[2] Ragin does not appear to have made a claim concerning this incident. Further, he fails to show that this incident constitutes an adverse employment action.

openings not being posted and his belief that this hindered his opportunity to advance himself. Carolee Hatchell, Human Resources Coordinator, wrote a letter to Ragin dated March 6, 2003, in which she stated that "[i]t has never been the practice to post job opportunities at any of the plants in the South Carolina District." Ragin Aff. Paras. 17-19; Ragin Dep. 61-63; Defendant's Motion for Summary Judgment, Ex. C.

12. David Risner ("Risner") became the plant manager of the Cayce quarry in February 2003. Risner Aff., Para. 2.

13. On June 18, 2003, Ragin was involved in an accident in which he backed his fuel truck into a delivery truck, causing damage to the delivery truck. Ragin received a written warning for the incident, which he did not dispute. Ragin Aff., Paras. 23-25; Ragin Dep. 77-78; Defendant's Motion for Summary Judgment, Ex. D.

14. Ragin was a member of a safety committee which included James Guinyard, Juan Omelias, Charlie Fagan ("Fagan"), Risner, and "Justin, the safety man." He claims that he was told to observe people only after getting their permission. Ragin believed that management did not have anything to do with the observations. See Ragin Dep. 51-52, 70-71.

15. Ragin claims that at an April 2003 meeting of supervisors, Risner, a white male, stated that he wanted Ragin terminated. Ragin was not present at the meeting and did not hear the alleged comments. See Ragin Dep. 116-117;[3] Ragin Aff., Para. 26.

---

[3]Ragin testified:
A. Like I said, the guy Charlie Walker told me that –when he found out that I got fired, he was the supervisor, and I called and talked with him and he told me that being that he was supervisor he had to do what the people tell him to do at the time. And he said before they fired me they [were] plotting about six months prior to that to get rid of me.
Q. Who is they? Who was plotting?

(continued...)

16. On June 26, 2003, Ragin received a written warning from Risner for "refusing to perform work functions." Ragin admits that he refused to perform the task as requested by Risner. He claims that he refused because Risner asked him to perform the employee safety observations differently than he had been instructed by Justin, the safety man. Ragin Aff., Paras. 27-28; Ragin Dep. 51-54.

17. On November 13, 2003, Ragin was operating a man lift, and bumped into a pickup truck owned by one of the foreman. Risner and an MSHA inspector witnessed the accident. Ragin claims that the accident resulted in very little damage. As a result of the accident, Ragin was initially suspended, and then terminated on November 17, 2003. Ragin Aff., Paras. 29-31, 39; Ragin Dep. 26 and 84; Risner Aff., Paras. 7-9.

---

[3](...continued)
A. Jim McKnight and David Risner [were] in the meeting with Charlie.
Q. So that is what Charlie told you?
A. Yes.
Q. That there was an actual meeting in which they discussed getting rid of you?
A. Right.
Q. Between Jim, David and Charlie?
A. Yes.
Q. Anybody else there?
A. I can't recall whether he said anybody else was there or not.
Q. Why did they want to get rid of you?
A. I guess from the letter that they sent me from–saying about the seniority thing.
Q. You guess. Do you know? I know what letter you are talking about, but you say you guess. Did Charlie tell you that?
A. Yes. He said it was because of that letter I got.
Q. That is what Charlie said or that is what you think.
A. I think Charlie said that the letter I got from Raleigh had something to do with it.
Q. Are you sure that is what Charlie said.
A. I am quite sure that is what he said.
Ragin Dep. 116-117.

## MOTION FOR SUMMARY JUDGMENT

Ragin alleges that he was terminated based on his race in violation of Title VII. He also claims that he was terminated in retaliation for complaining about alleged unlawful practices by Martin Marietta.[4] Marin Marietta contends that it is entitled to summary judgment because: (1) Ragin fails to establish a prima facie case of disparate treatment; (2) Ragin fails to establish a prima facie case of retaliation; and (3) it has articulated legitimate, nondiscriminatory reasons for its actions that Ragin fails to show are pretextual.

A.   <u>Disparate Treatment</u>

Ragin alleges that Martin Marietta terminated him based on his race. Martin Marietta contends that Ragin cannot establish a prima facie case of discrimination, it has articulated a legitimate, non-discriminatory reason for its actions, and Ragin fails to show that this reason is pretextual.

Title VII[5] makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with

---

[4] Ragin complains about a general failure to promote, but has not alleged a failure to promote to any specific position. He testified that he was interested in applying for either a loader or a quality control position, but admitted he was not qualified for either position and did not recall when these jobs were available. There was only one quality control position at the Cayce quarry. Ragin admitted that the employee (Hispanic male) hired had been a loader prior to being hired for the quality control position. Ragin had no knowledge of the qualification of the persons hired as loaders. He admitted that of the five loader positions he believed were available during his employment at Martin-Marietta, three of the positions were filled by African-American employees, one by a Hispanic employee, and one by a Caucasian employee. Ragin Dep. 107-109, 112.

[5] As noted above, Ragin also brings his claims under § 1981. The standard for establishing claims of employment discrimination under either Title VII or §1981 is the same. <u>See</u> <u>Gairola v. Commonwealth of Virginia Dep't of General Serv.</u>, 753 F.2d 1281, 1285-86 (4th Cir. 1985). Therefore, the analysis that follows, though couched in terms of Title VII, applies equally to Ragin's § 1981 claims.

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination by offering proof that:

> (1)  he is a member of a protected class;
>
> (2)  he was qualified for his job and his job performance was satisfactory;
>
> (3)  he was subjected to an adverse employment action; and
>
> (4)  the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.

See Gairola v. Commonwealth of Virginia Dep't of General Serv., 753 F.2d 1281, 1286 (4th Cir.1985); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.), cert. denied, 516 U.S. 870 (1995); McDonnell Douglas, 411 U.S. at 802.[6]  McDonnell Douglas provides that, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action.  McDonnell Douglas, 411 U.S. at 802.  If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment

---

[6] Although Ragin alleges that a white employee, Fagan, was not terminated after three accidents and he was terminated after two, the parties have both utilized the general framework for disparate treatment and not the one for disparate discipline.  Even if the disparate discipline framework is used, Ragin fails to establish a prima facie case because he has not shown that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of Fagan.  See Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir.), cert. denied, 472 U.S. 1021 (1985).

action, but were a pretext for discrimination. Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

        (1)     Prima Facie Case

The parties do not dispute that Ragin was a member of a protected class and was subjected to the adverse employment action of termination. Ragin claims that he has shown that his job performance was satisfactory because he received consistent raises in pay. He, however, fails to establish this prong of his prima facie case because he has not shown that his job performance was satisfactory at the time he was terminated. Although Ragin claims that his accidents were minor, there is no dispute that he was involved in two accidents at the Cayce quarry within six months of each other. He also admits he received a written warning for insubordination. Additionally, Ragin admitted in his deposition that he did not regularly wear his seat belt while operating Martin Marietta vehicles and he broke his toe while handling equipment in an unsafe manner. Ragin Dep. 74, 76.[7]

Additionally, Ragin fails to establish the fourth prong (that the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination) of his prima facie case. He argues that he has established this prong because Fagan, a white male, was involved in three accidents, but was not terminated. Ragin, however, has not shown that he and Fagan were similarly situated employees.[8] Risner states that Martin Marietta records indicate that

---

[7] In his affidavit, Ragin states that he began wearing his seat belt when that requirement was brought to his attention. He does not, however, state when that occurred. Ragin signed acknowledgment of his receipt of Martin Marietta's safety rules booklet in June and July 1999. The booklet provides that seat belts "shall be used." Ragin Dep. Exs. 1 and 2.

[8] In making a comparison of a plaintiff's treatment to that of employees outside the protected
(continued...)

9

Fagan was involved in two accidents that occurred over fifteen months apart and that one of the accidents occurred before Risner's tenure as plant manger at the Cayce quarry. Risner Aff., Para. 12. Both of Ragin's accidents occurred in parts of the quarry that carry out primary production functions. Ragin stated that he thought that one of Fagan's accidents occurred near the front office, an area not involved in blasting, crushing, or other aggregate functions of the plant. Ragin Dep. 93, 95-96. Ragin also admits that Martin Marietta fired white employee Tommy Price after only one accident.[9] Ragin Dep. 86-87.

### (2)     Legitimate, Non-discriminatory Reason/Pretext

Even if Ragin could establish his prima facie case, Martin Marietta has articulated a legitimate, non-discriminatory reason for its actions. Risner states that after Ragin's second motor vehicle accident on November 13, 2003, he reviewed Ragin's file and determined that as a result of Ragin's repeated violations of safety rules and company policies, including Ragin's

---

[8](...continued)
group, a plaintiff must show that the comparables are similarly situated in all relevant respects. See Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992); see also Lanear v. Safeway Grocery, 843 F.2d 298 (8th Cir. 1988)(plaintiff must prove that he and non-protected employee were similarly situated in all respects and the other employee's acts were of comparable seriousness to his own); see also Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494 (4th Cir. Dec. 7, 1998)(unpublished)(employees similarly situated only if they "dealt with the same supervisor, [were] subject to the same standards and...engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (citations omitted)), cert. denied, 527 U.S. 1036 (1999); Smith v. Stratus Computer, Inc., 40 F.3d 11 (1st Cir. 1994)(in disparate treatment cases, employees must be similar in "all relevant aspects" including performance, qualifications, and conduct)(citation omitted), cert. denied, 514 U.S. 1108 (1995); see also Bogren v. Minnesota, 236 F.3d 399, 405 (8th Cir. 2000)(finding that probationary and non-probationary employees are not similarly situated), cert. denied, 534 U.S. 816 (2001).

[9]White employee Tim Swallie, Jr. was also fired after only one accident. Swallie, Jr., however, was a new employee on a six month probation. Ragin Dep. 87-88.

10

two accidents in a six-month period, Ragin was considered to be an unsafe employee who should be terminated from his employment.

Ragin fails to show that Martin Marietta's reason for his termination is pretextual or that his race was the real reason for his termination. Ragin argues that he has shown that Martin Marietta's reason is pretextual because Charlie Walker ("Walker"), an African-American foreman, overheard Risner state that he wanted Ragin out of the quarry for complaining about promotion practices approximately six months prior to Ragin's termination. Ragin, however, has presented only his own hearsay statement to support this contention.[10] "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." Maryland Highways Contractors Ass'n, Inc. v. State of Maryland, 933 F.2d 1246, 1251 (4th Cir.), cert. denied, 502 U.S. 939 (1991); see also Greensboro Professional Firefighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995). Further, Ragin's statement is contradicted by Walker's deposition testimony. Walker testified:

> Q. [T]ell me exactly what David [Risner] said[?]
> A. That Leverne was, it was a safety incident, and when the part that I got on was to get him out of the quarry.
> Q. So David said that we need to get him [Ragin] out of the quarry?
> A. Yes.
> Q. And he was referring to a safety incident, you said.
> A. It was something going on about safety. I don't know exactly.
> Q. Do you know what they were talking about?
> A. No, not that part. Even if I did, I don't remember exactly the way it was.

Walker Dep. 97. This occurred in approximately June 2003. See Walker Dep. 74.

---

[10]In his affidavit, submitted with his memorandum in opposition to summary judgment, Ragin states:
> In approximately April 2003, at a meeting of supervisors, David Risner, the plant manager, had made a statement that he wanted me out of the quarry, he wanted me gone because I had raised the issue of job posting, and the disparate manner in which it impacted the African American employees.

Ragin Aff., Para. 26. This statement is contradicted by Walker's testimony.

11

B.      Retaliation

Ragin alleges that Martin Marietta retaliated against him for objecting to unlawful employment practices. Martin Marietta contends that Ragin cannot establish a prima facie case of retaliation and it has articulated a legitimate, nondiscriminatory reason for Ragin's termination that Ragin fails to show is pretextual.

To establish a prima facie case of retaliation under Title VII, an employee must demonstrate that:

1)    the employee engaged in protected activity;[11]

2)    the employer took some adverse employment action against the employee; and

3)    a causal connection existed between the protected activity and the adverse action.

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII); and Culver v. Gorman & Co., 416 F.3d 540 (7th Cir. 2005)(Title VII and Equal Pay Act). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the

---

[11]Under Title VII, a plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity. Warren v. Halstead Indus., Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

proffered reason was pretextual.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000).

        (1)    <u>Prima Facie Case</u>

Martin Marietta contends that Ragin cannot establish a prima facie case of retaliation because he cannot prove a casual connection between his termination and his complaints to Martin Marietta regarding the lack of job postings and employment opportunities for African-American employees.  Martin Marietta contends that temporal proximity alone cannot satisfy the causation requirement because Ragin was terminated over eight months after his final complaint and over two years after his initial documented complaint regarding lack of notice of job openings and job promotional opportunities for African-American employees.  Martin Marietta also contends that Ragin fails to establish a causal connection because Risner, at the time the decision was made to terminate Ragin, did not have any knowledge of Ragin's complaints to Martin Marietta regarding job openings, job postings, promotions, seniority, or discrimination.  Risner Aff., Para. 13.

Ragin fails to establish a causal connection because he has not shown that the decision maker (Risner) was aware that he had engaged in protected activity.  Ragin's 2001 complaints were prior to Risner becoming plant manager (February 2003).  In March 2001, Ragin complained to the hotline and his complaint was handled by human resources employee Carolee Hatchell.  Risner states that he did not have any knowledge of Ragin's complaints to Martin Marietta regarding job openings, job posting, promotions, seniority, or race discrimination.  Risner Aff., Para. 13.  <u>See Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998)(plaintiff failed to establish third prong of prima facie case of retaliation claim where decision

maker was unaware that plaintiff had engaged in protected activity); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)("Knowledge of a charge [of discrimination] is essential to a retaliation claim."); Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001)(no causal connection because individual taking action against employee had no knowledge of protected activity).  Ragin claims that he has established a causal connection based on the alleged comment of Risner that Martin Marietta needed to get rid of Ragin for complaining about promotion practices.  As discussed above, however, Ragin has only submitted his own hearsay testimony in support of this contention.  Walker, who allegedly overheard the conversation in which Risner stated he wanted Ragin out of the quarry, testified that Risner was talking about a safety incident.  Ragin has submitted nothing to show that Risner stated he wanted Ragin out of the quarry for engaging in protected activity.

    (2)  Legitimate, Non-Discriminatory Reason/Pretext

    Even if Ragin could establish his prima facie case, Martin Marietta has articulated a legitimate, non-discriminatory reason for terminating Ragin, that he had been involved in repeated safety violations including two motor vehicle accidents within six months.  As discussed above, Ragin fails to show pretext.

### MOTION TO STRIKE

On October 31, 2005, Martin Marietta filed a motion to strike Ragin's affidavit (filed in opposition to Martin Marietta's motion for summary judgment) because the affidavit mischaracterizes the facts of record, contains statements that directly contradict Ragin's own deposition testimony, contains inadmissible hearsay, and contains irrelevant information.  Ragin filed a memorandum in opposition on November 14, 2005, and Martin Marietta filed a reply on November 23, 2005.

As discussed above, even if Ragin's affidavit is considered in full, he fails to show that Martin Marietta violated his rights under Title VII or § 1981.  It is, therefore, recommended that Defendant's motion to strike be denied as moot.

## CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc.15) be granted and Defendant's motion to strike Plaintiff's affidavit (Doc. 20) be denied as moot.

                                              Respectfully submitted,

                                              s/Joseph R. McCrorey
                                              United States Magistrate Judge

June 29, 2006
Columbia, South Carolina